UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMAL WILLIAMS,

               Plaintiff,

– against –

AARON JOHNSON and JOHN DOES 1-5,

               Defendants.

**OPINION & ORDER**

17 Civ. 2351 (ER)

---

Ramos, D.J.:

Jamal Williams brings this action against Sergeant Aaron Johnson and five unidentified police officers under 42 U.S.C. § 1983, alleging causes of action for false arrest, malicious prosecution, denial of the right to a fair trial, and failure to intervene. Johnson moves for summary judgment on all claims. For the reasons that follow, Johnson's motion is DENIED in part and GRANTED in part.

I.     BACKGROUND

The following facts are not disputed unless noted.[1]

Sometime in the week prior to November 18, 2015, Johnson received a call from Sergeant John Hagan, a 9th precinct field intelligence officer. Pl.'s Response to Def.'s 56.1 Statement of Facts ¶¶ 3–4. Hagan informed Johnson of the potential presence of a gun and ammunition at Apartment 9C, 205 Avenue C, New York, New York, based on Hagan's

---

[1] The facts are taken from the parties' 56.1 statements of facts, declarations, and exhibits.

communication with a confidential informant.[2] *Id.* Johnson subsequently ran the address location through the New York Police Department's systems to determine the identities of the building tenants and any associated information. *Id.* ¶ 7. Johnson also visited 205 Avenue C to ensure there was only one Apartment 9C at the address, then ran a search to obtain possible apartment tenants and any associated information. *Id.* ¶¶ 9–11. Johnson identified two names associated with the apartment, Jamal Williams and Andrew Hudson. *Id.* ¶ 12. Williams was the leaseholder of Apartment 9C at that time. *Id.* ¶ 15. Hudson is Williams' brother and was living with Williams. *Id.* ¶ 16. Johnson presented the results of his investigation to the New York County District Attorney's Office. *Id.* ¶ 17. Based on this evidence, Assistant District Attorney Jessica Wash drafted an application for a search warrant supported by an affidavit signed by Johnson and presented the application to New York County Criminal Court Judge Felicia A. Mennin. *Id.* ¶¶ 20–21. On November 17, 2015, Judge Mennin issued a search warrant based on ADA Wash's application for Apartment 9C. *Id.* ¶ 25. The search warrant identified the potential presence of "firearms" and "ammunition," and granted permission for officers "to enter without giving notice of authority and purpose, and to search the target premises, and the persons of Jamal Williams and [redacted], if present therein, for the above described property." Mitchell Decl. Ex. H.

The next day, at 6:00 AM, Johnson and several other officers entered Williams' apartment. Pl.'s Response to Def.'s 56.1 Statement of Facts ¶ 26. Johnson then entered Williams' bedroom and found Williams in his bed. *Id.* ¶ 29. Another officer promptly handcuffed Williams. *Id.* ¶ 30. The officers then entered and searched the other two bedrooms

---

[2] Williams' hearsay objection to Sergeant Hagan's statement is overruled on the grounds that it is not offered for the truth of the matter stated but for the purpose of assessing whether Johnson was reasonable in believing he had probable cause to arrest Williams. Fed. R. Evid. 801.

2

in the apartment, found Hudson and Tiffany Pena in Hudson's bedroom and handcuffed them. *Id.* ¶¶ 31–33. Williams, Hudson, and Pena were moved outside the apartment and made to sit in the hall while the officers conducted the search. *Id.* ¶ 35.

During the search, Johnson recovered a .357 Magnum revolver, ammunition, a scale, and heat-sealed bags of marijuana from Hudson's bedroom. *Id.* ¶ 36. The marijuana was found inside a black plastic garbage bag. *Id.* The gun and ammunition were found inside a nylon bag which itself was inside a knapsack. *See* Mitchell Decl. Ex. C 188:9–189:18, 192:2–193:7. Johnson claims to have also recovered another black plastic garbage bag containing a heat-sealed bag of marijuana from the living room, Def.'s 56.1 Statement of Facts ¶ 37, but Williams disputes this, Pl.'s Response to Def.'s 56.1 Statement of Facts ¶ 37. Johnson took photographs of the items he recovered from Hudson's bedroom and the garbage bag he claims to have found in the living room at the sites he claims to have found them. *Id.* ¶ 38; Mitchell Decl. Ex. N. Williams did not witness Johnson recovering any of the items in the apartment, Pl.'s Response to Def.'s 56.1 Statement of Facts ¶ 39, as Williams was made to wait outside the apartment with Hudson and Pena.

Williams, Hudson, and Pena were then transported to the 9th Precinct by unknown officers. *Id.* ¶ 44. At the precinct, Williams was Mirandized and gave a videotaped statement to an officer. *Id.* ¶¶ 45–47. In his statement, Williams stated that he had previously attempted to evict Hudson but failed, that he knew that Hudson smoked marijuana and had marijuana in the apartment, that he had once inspected Hudson's room and found a gun, and that Hudson had told Williams that he would remove the gun. *Id.* ¶¶ 50–52. Williams was charged with criminal possession of marijuana and criminal use of drug paraphernalia. *Id.* ¶ 61; Mitchell Decl. Ex. F.

Later that day, Johnson and his team of officers prepared vouchers documenting the items

3

collected from Williams' apartment. Def.'s Response to Pl.'s 56.1 Statement of Facts ¶ 116; Mitchell Decl. Ex. O. One of the vouchers identified three packages of marijuana—including the same packages that Johnson stated he found in the living room—as having been recovered from "bedroom #1," which the parties agree refers in this context to Hudson's bedroom. Def.'s Response to Pl.'s 56.1 Statement of Facts ¶ 116; Mitchell Decl. Ex. O at 14. This voucher was prepared by Detective David Bailey, Mitchell Decl. Ex. O at 14, who was present during the search, Mitchell Decl. Ex. C at 212:18–23.

The District Attorney's Office jointly charged Williams and Hudson for possession of a firearm and possession of marijuana. Pl.'s Response to Def.'s 56.1 Statement of Facts ¶ 74; Mitchell Decl. Ex. L. Johnson signed the criminal court complaint drafted by the District Attorney's office. *Id.* ¶ 75. On November 19, 2015, Williams was arraigned on the charges and released on his own recognizance. *Id.* ¶ 76. Williams was required to appear for four subsequent court appearances. *Id.* ¶ 77. On June 16, 2016, the charges against Williams were dismissed. *Id.* ¶ 80.

On March 31, 2017, Williams filed the instant action, naming the City of New York, Johnson, and five unidentified officers as defendants. Doc. 1. Williams and the City of New York later stipulated to the dismissal of the City as a defendant. Doc. 38. On May 21, 2018, Johnson moved for summary judgment on all of Williams' remaining claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free*

4

*Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

## III. DISCUSSION

In his opposition to the instant motion, Williams withdraws his claim under 42 U.S.C. § 1983 for unlawful entry. *See* Doc. 42 at 1. Therefore, the only remaining claims are the § 1983 claims for false arrest, malicious prosecution, denial of the right to a fair trial, and failure to intervene. Johnson moves for summary judgment on all these claims.

5

A. *False Arrest*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). The existence of probable cause completely bars a federal civil rights claim for false arrest. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. The probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest. *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Probable cause need not have existed for the charge "actually invoked by the arresting officer at the time of the arrest," *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012), *as amended* (Dec. 4, 2012) (quoting *Devenpeck*, 543 U.S. at 20), what matters is whether probable cause existed to arrest the plaintiff for "any single offense," *id.* (quoting *Marcavage v. City of New York*, 689 F.3d 98, 109–10 (2d Cir. 2012); *accord Wallace v. City of Albany*, 283 A.D.2d 872, 873 (N.Y. 3d Dep't 2001).

Johnson argues that Williams' false arrest claim fails as a matter of law because probable cause existed to arrest Williams of marijuana possession in the third degree, N.Y. Pen. Law § 221.20, marijuana possession in the second degree, N.Y. Pen. Law § 221.25, criminal possession of a weapon in the second degree, N.Y. Pen. Law § 265.03(1)(b), and criminal possession of a firearm, N.Y. Pen. Law § 265.01-B(1).

1. <u>Possession of marijuana</u>

A person is guilty of criminal possession of marihuana in the second degree when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marijuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than sixteen ounces. N.Y. Pen. Law § 221.25. A person is guilty of criminal possession of marijuana in the third degree when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than eight ounces. N.Y. Pen. Law § 221.20. To "possess" something "means to have physical possession or otherwise to exercise dominion or control over tangible property." N.Y. Pen. Law § 10.00(8). Johnson argues that he had probable cause to arrest Williams because he found over eight ounces of marijuana in Williams' living room, and since Williams is the leaseholder and the living room is a common space of the apartment, Williams has possession of the marijuana in the living room.

The Court finds that a genuine factual dispute exists as to whether Johnson recovered the marijuana from Williams' living room or from Hudson's bedroom. Johnson's evidence that the marijuana was in Williams' living room consists of his testimony and a photo he took of the bag purportedly containing marijuana next to the TV console in Williams' living room. Def.'s Statement of Facts ¶¶ 37, 38; Mitchell Decl. Ex. C 208:8–210:25; Mitchell Decl. Ex. N. But Williams has put forth competing evidence. First, the NYPD voucher, a record documenting physical evidence collected at the time of arrest, describes the marijuana in question as having

been collected in Hudson's bedroom.[3] *See* Mitchell Decl. Ex. O at 14. Second, Williams proffers his own testimony that marijuana could not have been found in his living room. *See* Pl.'s Response to Def.'s Statement of Facts ¶ 39; Lumer Decl. Ex. 2 108:8–10.

Johnson argues that the mere fact that Williams disputes Johnson's version of events is insufficient to defeat summary judgment because Johnson's version of events is supported by "incontrovertible evidence," citing *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007). It is true that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). But Johnson vastly overstates the difference in strength between his and Williams' accounts of what happened. The record does not unambiguously support his position. The voucher prepared by Detective Bailey, who was on the scene of arrest, unambiguously states that the marijuana was found in Hudson's bedroom. *See* Mitchell Decl. Ex. O at 14. A reasonable jury could weigh this evidence along with Johnson's and Williams' testimony to find in Williams' favor.

Johnson does not argue that probable cause would have existed even if the marijuana was found in Hudson's bedroom. Whether Johnson found the marijuana in the living room or Hudson's bedroom is thus a fact material to Williams' false arrest claim. Because a genuine dispute exists as to that question, summary judgment is denied insofar as Johnson's probable cause to arrest is based on the purported recovery of marijuana from Williams' living room.

---

[3] Johnson argues that the voucher should not be credited because a different officer, Detective David Bailey, prepared the voucher. *See* Mitchell Decl. Ex. O at 14. There is no legal basis for ignoring the voucher on these grounds; a jury can determine how much weight to give the voucher based on Bailey's authorship.

2. <u>Possession of weapon or firearm</u>

A person is guilty of criminal possession of a weapon in the second degree when he possesses a loaded firearm with intent to use it unlawfully against another person. N.Y. Pen. Law § 265.03(1)(b). A person is guilty of criminal possession of a firearm when he possesses any firearm. N.Y. Pen. Law § 265.01-B(1). A loaded firearm is one loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm. N.Y. Pen. Law § 265.00(15). And a person "possesses" something when he or she has physical possession or otherwise exercises dominion or control over it. N.Y. Pen. Law § 10.00(8). The possession of a loaded firearm is presumptive evidence of intent to use it unlawfully against another. N.Y. Pen. Law § 265.15(4). Johnson argues that Williams constructively possessed the gun found in Hudson's bedroom, furnishing him with probable cause to arrest Williams.

"Constructive possession exists when a person has the power and intention to exercise dominion and control over an object, and may be shown by direct or circumstantial evidence." *United States v. Facen*, 812 F.3d 280, 286–87 (2d Cir. 2016) (quoting *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998)). "[M]ere presence at the location of contraband does not establish possession," *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988), but "'presence under a particular set of circumstances' from which a reasonable jury could conclude that the defendant constructively possessed contraband located there" can, *Facen*, 812 F.3d at 287 (quoting *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cir. 1992)). Courts have found a variety of factors and circumstances relevant to determining whether a person constructively possessed contraband, including possession of a key to the location where the contraband is located, the presence of the contraband in plain view, and the availability of identification showing that the

person resided where the contraband was. *See id.* (collecting cases). Thus, whether constructive possession exists is a fact-intensive inquiry.

Here, the quantum of evidence that the police had at the time of the arrest is that there was the potential presence of a gun and ammunition at the apartment, that Williams was the leaseholder, that Hudson lived there as well, and that the gun was found in Hudson's room. A reasonable jury could find that Johnson did not have information sufficient to believe that Williams had the power to exercise dominion and control over the gun, considering that the gun was recovered in Hudson's room. Some courts have found constructive possession lacking when the contraband in question is found in potentially inaccessible parts of a criminal defendant's apartment. *See, e.g., Davis v. City of New York*, 2007 WL 755190, at *10 (E.D.N.Y. Feb. 15, 2007) (finding that § 1983 plaintiffs may be able to demonstrate lack of probable cause if "there is no evidence directly or indirectly linking them to the bullets in their brother's closet such that one could conclude they exercised some dominion and control over such bullets"); *Jones v. City of New York*, 2014 WL 1427855, at *5 (E.D.N.Y. Apr. 14, 2014) ("[T]he ultimate resting place of other guns in bedrooms cannot be attributed to plaintiff without information that he had some residency or regular access to a particular bedroom where a gun was found."); *but see Cammick v. City of New York*, 1998 WL 796452, at *3 (S.D.N.Y. Nov. 17, 1998) (finding that plaintiffs constructively possessed gun found in closet).[4]

Because factual disputes exist as to the location of the recovered marijuana and whether Johnson was justified in believing Williams to exercise dominion and control over the gun in his brother's bedroom, summary judgment on Williams' false arrest claim is unwarranted.

---

[4] Johnson additionally argues that he had probable cause to arrest Williams because Williams later disclosed that he knew Hudson kept a gun in his room. Def.'s 56.1 Statement of Facts ¶ 52. But these statements were given after Williams' arrest. They are thus irrelevant to the issue of probable cause.

3. <u>Qualified immunity</u>

However, Williams' false arrest claim nonetheless fails because Johnson is entitled to qualified immunity. "Public officials are entitled to qualified immunity from liability for civil damages so long as their conduct does not violate a clearly established statutory or constitutional right. Public officials receive this protection upon establishing that it was objectively reasonable for them to believe that their acts did not violate clearly established rights." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citation omitted). The Court may grant summary judgment in favor of public officials if "they adduce sufficient uncontroverted facts that, even looking at the evidence in the light most favorable to the plaintiffs and drawing all inferences favorable to the plaintiffs, no reasonable jury could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not violate an established federally protected right." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) (quoting *Hurlman v. Rice*, 927 F.2d 74, 78–79 (2d Cir. 1991)). Thus, "evidence insufficient to sustain a finding of probable cause may be adequate to show qualified immunity." *Elk v. Townson*, 839 F. Supp. 1047, 1052 (S.D.N.Y. 1993) (citing *Warren v. Dwyer*, 906 F.2d 70, 75 (2d Cir. 1990), *cert. denied* 498 U.S. 967, 111 (1990)). Qualified immunity protects an officer against a false arrest claim if he or she had "arguable probable cause" to arrest the plaintiff. *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

Johnson had arguable probable cause to arrest Williams. Johnson had a valid search

warrant that stated reasonable cause existed to believe there were firearms at Williams' apartment, identifying Williams by name. *See* Pl.'s Response to Def.'s 56.1 Statement of Facts ¶ 25; Mitchell Decl. Ex. H. Johnson then indeed recovered a firearm from Williams' apartment, in his brother's bedroom. Johnson could have reasonably believed that Williams, as the leaseholder of the apartment, exercised dominion and control over the gun in Hudson's bedroom sufficient to arise to constructive possession. Thus, Johnson had arguable probable cause to arrest Williams even if, as Williams argues, no marijuana could have been recovered from the living room. Multiple courts have found arguable probable cause sufficient to warrant qualified immunity in similar cases. *See, e.g.*, *Caraballo v. City of New York*, 526 F. App'x 129, 131 (2d Cir. 2013) (finding that officers reasonably believed persons found sleeping in an apartment in which officers found suspected MDMA in the dining room had control and dominion over the substances); *Jackson ex rel. Jackson v. Suffolk Cty.*, 87 F. Supp. 3d 386, 405–06 (E.D.N.Y. 2015) (granting qualified immunity to officer who arrested resident of house where contraband was found in a jacket with unknown owner).

Because Johnson had arguable probable cause to arrest Williams, summary judgment on Johnson's qualified immunity defense is warranted. Williams' false arrest claim thus fails.

B. *Malicious Prosecution*

A claim of malicious prosecution brought under § 1983 shares the same elements as a claim of malicious prosecution brought under state law. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). "Under New York law, a plaintiff suing for malicious prosecution must establish: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* In addition to the state law

elements, a plaintiff must also show that he or she suffered "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).[5] Johnson argues that Williams' malicious prosecution claim fails because there was probable cause to prosecute Williams, there was no malice, and Williams did not suffer a sufficient post-arraignment liberty restraint.

A reasonable juror could find that probable cause was lacking to initiate a legal proceeding against Williams for the same reasons a reasonable juror could find that Johnson lacked probable cause to arrest Williams. Johnson does not argue otherwise; he simply argues that there was probable cause to prosecute Williams because there was probable cause to arrest him. *Cf. Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'").

A reasonable juror could also find, viewing the facts in the light most favorable to plaintiff, that Johnson was motivated by actual malice. "Malice means 'that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03 (N.Y. 1978)). New York courts have also stated that malice must entail "a showing of some deliberate act punctuated with awareness of 'conscious falsity' to establish malice." *Best v.*

---

[5] "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

*Genung's Inc.*, 46 A.D.2d 550, 552 (N.Y. App. 3d Dep't 1975) (quoting *Munoz v. City of New York*, 18 N.Y.2d 6, 9 (N.Y. 1966); *see also Jenkins v. City of New York*, 1992 WL 147647, at *6 (S.D.N.Y. June 15, 1992). Were the jury to credit the NYPD evidence voucher and Williams' testimony that the marijuana purportedly found in the living room could not have been there, they could conclude that Johnson acted with an improper motive in arresting Williams.

Lastly, the Court finds that Williams endured a sufficient post-arraignment liberty restraint. In *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997), the Second Circuit held that

> while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

*Id.* at 946. Thus, both restrictions on a criminal defendant's right to travel and requirements to make court appearances can sustain a § 1983 malicious prosecution claim. *Id* at 946–47.[6] Here, it is undisputed that, after Williams was released on his own recognizance at the arraignment, Williams was required to make an additional four court appearances. Pl.'s Response to Def.'s 56.1 Statement of Facts ¶ 77. During this time, Williams was required "to render himself at all times amenable to the orders and processes of the court," N.Y. Crim. Proc. Law § 510.40. In *Rohman*, the Second Circuit found that being required to appear in court five times after arraignment posed a sufficient incursion on one's liberty to implicate the Fourth Amendment, 215 F.3d at 216. Williams attended just one fewer court appearance; thus, like the plaintiff in

---

[6] Johnson cites to two Second Circuit summary orders purporting to show that a required court appearance does not amount to a sufficient post-arraignment liberty restraint. They are both distinguishable. The plaintiff in *Coleman v. City of New York*, 688 F. App'x 56 (2d Cir. 2017), was charged with a variety of offenses arising out of a single incident, some of which were supported by probable cause and others of which were not. Because the plaintiff had to appear in court for the offenses supported by probable cause anyways, a causal connection between that restraint and the offenses for which the defendant allegedly maliciously prosecuted him was lacking. The plaintiff in *Faruki v. City of New York*, 517 F. App'x 1 (2d Cir. 2013), only appeared in court for her trial, at which time the prosecution did not proceed and the Court dismissed the charges. *See Faruki v. City of New York*, 2012 WL 1085533, at *3 (S.D.N.Y. Mar. 30, 2012), *aff'd*, 517 F. App'x 1 (2d Cir. 2013).

14

*Rohman*, he has suffered a liberty restraint sufficient to implicate the Fourth Amendment and thereby maintain his malicious prosecution claim.

Because a reasonable jury could find that Johnson lacked probable cause and acted with malice in proceeding against Williams, and because Williams suffered a liberty restraint sufficient to implicate his constitutional rights, summary judgment on Williams' malicious prosecution claim is unwarranted.

C. *Denial of the Right to a Fair Trial*

To make a denial of the right to a fair trial claim based on the fabrication of information, a plaintiff must show that an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). "Because probable cause is no defense to a denial of the right to a fair trial claim, fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims." *Id.* at 278. Johnson argues that Williams' claim fails because no reasonable jury could find that Johnson fabricated the location of the marijuana purportedly discovered in Williams' living room and Williams did not suffer any deprivation of life, liberty, or property.

As previously discussed, a reasonable jury evaluating the facts in the light most favorable to the plaintiff could credit Williams' account of where the contested marijuana was located and find that Johnson fabricated the marijuana's location. And under *Lynn* and *Rohman*, Williams suffered a liberty restraint that implicated constitutional rights. Therefore, summary judgment on Williams' claim for denial of right to fair trial is unwarranted.

15

D.  *Failure to Intervene*

All police officers have an affirmative duty to intervene to protect the constitutional rights of people from infringement by other police officers in their presence. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Id.* (citations omitted).

Williams marshals no evidence showing that Johnson failed to intercede another officer's unconstitutional actions; his § 1983 claims are all against Johnson. Thus, summary judgment is granted in Johnson's favor on Williams' failure to intervene claim. Insofar as Williams' failure to intervene claim is against the John Doe defendants, they must be dismissed. As many courts have held, "[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). *See also Warren v. Ewanciw*, 2019 WL 589488, at *5 (S.D.N.Y. Feb. 13, 2019) (following *Coward*); *Abujayyab v. City of New York*, 2018 WL 3978122, at *4 (S.D.N.Y. Aug. 20, 2018) (same); *T.R. by & through Yon-Rawls v. City of New York*, 2018 WL 3962830, at *5 (S.D.N.Y. Aug. 16, 2018) (same). Williams filed suit nearly two years ago, yet he has not amended his complaint to identify the John Doe defendants. The Court thus *sua sponte* dismisses the claims brought against these unidentified defendants.

## IV. CONCLUSION

For the reasons set forth above, Johnson's motion for summary judgment is GRANTED as to Williams' claims for false arrest and failure to intervene and DENIED as to Williams' claims for malicious prosecution and denial of right to fair trial. The parties are instructed to appear for a pretrial conference at 10:30AM, April 12, 2019, at Courtroom 619, Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. The Clerk of Court is respectfully directed to terminate the motion, Doc. 34.

SO ORDERED.

Dated: March 31, 2019
New York, New York

Edgardo Ramos, U.S.D.J.