UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMAL WILLIAMS,

    Plaintiff,

-against-

AARON JOHNSON,

    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/19/2021

17-CV-2351 (BCM)

**ORDER DISMISSING CASE AND IMPOSING SANCTIONS**

**BARBARA MOSES, United States Magistrate Judge.**

    By letter-motion dated December 30, 2020, plaintiff Jamal Williams requests that the Court (i) dismiss his remaining claims with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), and (ii) sanction defendant Aaron Johnson and his counsel, the New York City Law Department (Law Department), pursuant to Fed. R. Civ. P. 37(d), for withholding, until the eve of trial, a short video that substantially undercuts plaintiff's case. Pl. Ltr. (Dkt. No. 70) at 1. Defendant joins the motion to dismiss but opposes the request for sanctions, arguing that plaintiff himself was "aware of" and "in possession of" the same video, which he apparently concealed even from his own lawyer. Def. Ltr. (Dkt. No. 72) at 1, 2. For the reasons that follow, plaintiff's claims will be dismissed with prejudice and the Law Department will pay the sum of $100 to the Clerk of Court.

## Background

    This action arises out of plaintiff's arrest by the New York City Police Department (NYPD) on November 18, 2015, and his subsequent prosecution, based on a criminal complaint signed by defendant, for possession of a firearm and possession of marijuana. The criminal case was dismissed on June 16, 2016, at the request of the People, "because we cannot prove it beyond a reasonable doubt." (Dkt. No. 65-1.)

    Plaintiff filed this action March 31, 2017, asserting claims against Johnson and others for false arrest, malicious prosecution, denial of the right to a fair trial, and failure to intervene. (Dkt.

No. 1.) On March 31, 2019, after discovery was completed, the Honorable Edgardo Ramos, United States District Judge, granted defendants' summary judgment motion in part, leaving two claims for trial against defendant Johnson: malicious prosecution and denial of the right to a fair trial. *See* Op. & Order (Dkt. No. 47) at 17.

Both remaining claims turn largely on whether defendant had probable cause to prosecute plaintiff after a search of his apartment on November 18, 2015 (pursuant to a search warrant) uncovered bags of marijuana, a scale, a .357 magnum revolver, and ammunition. The parties dispute whether any of the marijuana was found in the living room – shared by Williams and his brother, Andrew Hudson – or whether all of it was recovered from Hudson's bedroom. *See* Op. & Order at 3-4, 7-8. The parties agree that the gun was found in Hudson's bedroom, *see id*. at 3, but disagree as to whether Johnson had probable cause to believe that Williams had actual or constructive possession of the firearm, as required for a criminal conviction. *See* Def. Mem. dated May 21, 2018 (Dkt. No. 37), at 10-13; Pl. Mem. dated July 17, 2018 (Dkt. No. 42), at 7-11. "In New York, the rule has long been that to support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." *People v. Manini*, 79 N.Y.2d 561, 573 (1992) (citations omitted).

Trial was originally scheduled to commence on June 24, 2019, before a jury. However, on May 22, 2019, the parties consented to jurisdiction by a magistrate judge for all purposes. (Dkt. No. 52.) On October 6, 2020, the district judge so-ordered that consent (Dkt. No. 54), and the case was assigned to me for trial. On October 20, 2020, Senior Attorney Bilal H. Haider of the Law Department entered his appearance on behalf of defendant. (Dkt. No. 56.) On November 6, 2020, I scheduled trial to commence on January 25, 2021, and directed the parties to file their joint

pretrial order and submit their witnesses' direct testimony, in affidavit form, by January 4, 2021. (Dkt. No. 59.)

### The Video

On December 29, 2020, "[i]n accordance with defendant's continuing discovery obligations pursuant to Fed. R. Civ. P. 26(a)(1) and 26(e)," defendant produced, for the first time, an electronic copy of what attorney Haider described as a "Social Media Video of Plaintiff." (Dkt. No. 70-1.) The undated video, which was "apparently taken with a cell phone," "appears to show plaintiff with a handgun similar to that recovered on November 18, 2015." Pl. Ltr. at 2. In response to questions from plaintiff's counsel, attorney Haider stated, in a December 30, 2020 email, that the video "was taken from plaintiff's own [F]acebook page and provided to defendant Johnson prior to the execution of the search warrant of plaintiff's apartment." (Dkt. No. 70-2.)

### The Letter-Motion and Response

Plaintiff filed his letter-motion later that day, explaining through his counsel, Michael Lumer, that he wished to discontinue this lawsuit with prejudice because the video "goes both to the heart of this case (whether defendants had probable cause to arrest and prosecute plaintiff for the actual or constructive possession of the handgun) and the plaintiff's disavowals of knowledge of the gun in his post-arrest statements." Pl. Ltr. at 3. At the same time, plaintiff sought sanctions against the Law Department for its "intentional withholding" of the evidence, which "resulted in the needless expenditure of many hours and dollars, and wasted the Court's valuable time and resources." *Id.*[1]

In defendant's responding letter, also dated December 30, 2020, attorney Haider pointed out the "ironic" nature of the relief sought by plaintiff, who moved to "abandon this lawsuit" only

---

[1] Speaking for himself, attorney Lumer stated that "prior to yesterday afternoon" he "had no idea that this video existed, or of the facts and evidence suggested in the video." Pl. Ltr. at 2. Had counsel known about the video, he "would have sought immediately to discontinue the action or move to be relieved as counsel." *Id.*

3

"when faced with the possibility that [the] information he willfully failed to disclose to defendant and his own counsel may be presented at trial." Def. Ltr. at 1. Defendant acknowledged that the Law Department received the video "no later than September 2017," and conceded that it "may have been responsive" to plaintiff's discovery requests, which is why Haider determined to produce it upon reviewing the case file. Def. Ltr. at 2. However, defendant asserted, "previous defense counsel" deemed the video "pure impeachment evidence that was not responsive to plaintiff's discovery requests." *Id*. Therefore, defendant concluded, the Law Department did not "intentionally withhold discoverable evidence." *Id*.

I adjourned the parties' remaining pretrial deadlines (Dkt. Nos. 71, 74) and directed them to submit a joint letter attaching "each discovery request (including, if applicable, deposition questions) that, in either party's view, required the opposing party to disclose the video," as well as a copy of the video itself. (Dkt. No. 74.) On January 12, 2021, the parties filed the required letter (Joint Ltr.) (Dkt. No. 75), attaching various discovery materials.[2] Those materials reveal that "[p]revious defense counsel" was Assistant Corporation Counsel Alison S. Mitchell, who represented defendant Johnson during the discovery phase of this action and signed his written discovery responses. In one of those responses, dated October 2, 2017, defendant denied that there were any documents or other items responsive to plaintiff's Document Demand No. 13, which sought:

> All documents, communications, and electronically memorialized information, including without limitation all photographs, video recordings, audio recordings, digital images, or other similar media, concerning the various items of contraband allegedly recovered during the Arrest, including but not limited to the handgun and the marijuana.

(Dkt. No. 75-2, at 24-25.)

---

[2] The 37-second video, which could not be filed on ECF, was emailed to the Court. On it, the plaintiff can be heard and seen stating, among other things, "the next person that violates me, gonna get popped." He then displays a revolver to the camera.

During argument on the motions to dismiss and for sanctions, which I heard on January 15, 2021, counsel disagreed on the provenance of the video. Attorney Haider stated that defendant Johnson received it from a confidential informant who told him that the informant "got it from Facebook." Counsel conceded that defendant did not personally see the video on Facebook or any other social media site. Attorney Lumer reported that – according to his client – the video was on a phone of his that was "taken" by an ex-girlfriend several weeks prior to his arrest, but was never posted to his Facebook account or other social media. Plaintiff "assumes" that it was the ex-girlfriend who gave the video to the police.

## Analysis

A federal trial court may dismiss an action, at the plaintiff's request, "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Unless the order states otherwise, the dismissal is without prejudice. *Id*. Here, plaintiff requests that his remaining claims be dismissed with prejudice. Pl. Ltr. at 1. Defendant having joined in that motion, *see* Def. Ltr. at 1, it will be granted.

Plaintiff also requests discovery sanctions pursuant to Rule 37(d). Pl. Ltr. at 1. The Court agrees with plaintiff that the Law Department improperly withheld the video from production during the discovery phase of this action, and that its discovery misconduct "caused this litigation to continue onward" for another three years, unnecessarily burdening the parties, their counsel, and the Court. Pl. Ltr. at 3. Document Demand No. 13 called for the production of "all . . . video recordings . . . concerning the various items of contraband allegedly recovered during the Arrest, including . . . the handgun." The video now at issue falls squarely within these parameters, was in the possession of the Law Department, and therefore should have been produced.

Defendant's characterization of the video as "pure impeachment evidence" is unavailing. While the video may indeed constitute powerful impeachment material,[3] it also shows Williams

---

[3] According to attorney Lumer, plaintiff "testified at deposition that he was unaware there was a gun in the apartment and denied having seen that gun prior to its recovery by the NYPD. This was

exercising what looks like "dominion and control" over the handgun and is therefore relevant to the probable cause question at the heart of this action. Moreover, while a party need not disclose "pure impeachment evidence" pursuant to Rule 26(a)(1)(A)(ii), such evidence may be discoverable pursuant to, *inter alia*, Rule 34. *See* Fed. R. Civ. P. 26(b)(1) advisory committee note to 2000 amendments ("[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."); *Brown v. City of New York*, 2011 WL 4594276, at *2 (E.D.N.Y. Sept. 30, 2011) (granting plaintiff's motion to compel production of defendant officers' IAB files for impeachment purposes, and collecting similar cases). In any event, the Law Department made no objection to producing the video on relevance grounds. Instead, it served a written response to Document Demand No. 13 on October 2, 2017, signed by attorney Mitchell, flatly denying the existence of any "documents or other items responsive to this demand." That statement was not accurate, and was not corrected until the eve of trial, warranting sanctions.

Two difficulties remain. First, plaintiff's own misconduct was substantial. It now appears that he filed and pursued a case of dubious merit while concealing both the existence of the video (which he clearly knew about, even if he no longer possessed the phone on which it was recorded) and the facts that it depicts.[4] Had he timely disclosed those facts – for example, at deposition – the

---

consistent with his recorded post-arrest statements. The video . . . contradicts these statements." Pl. Ltr. at 2.

[4] The Court is not convinced that plaintiff was obligated to disclose the video itself in discovery. Fed. R. Civ. P. 26(a)(1)(A)(ii) does not require disclosure of documents other than those the disclosing party "may use to support its claims and defenses." Moreover, defendant – unlike plaintiff – never specifically requested the production of documents or videos concerning the handgun. Defendant points to his Interrogatory No. 2, which asked plaintiff to identify all "statements," including recorded statements, that were "prepared by plaintiff or any other person" and that "relate to the claims and/or subject matter of this litigation." (Dkt. No. 75-3, at 2-3.) The Court notes, however, that plaintiff did not deny the existence of any responsive statements. Instead, he objected to Interrogatory No. 2 as overbroad and beyond the scope of Rule 26(b)(1). (*Id.*) There is no suggestion in the record now before the Court that defendant ever moved to compel a further response or otherwise pursued the point.

case would likely have been dismissed or otherwise resolved well before trial. This does not excuse defendant's independent discovery failure or insulate the Law Department, which is properly held to "a high ethical standard," *DaCosta v. Tranchina*, 285 F. Supp. 3d 566, 575 (E.D.N.Y. 2018), from sanctions. Any sanction imposed, however, must be narrowly crafted to address the Law Department's misconduct without rewarding the plaintiff in any way.

Second, the Court cannot impose discovery sanctions pursuant to Rule 37(d), which applies only where a defendant fails to appear for his deposition or fails outright to "serve [his] answers, objections, or written response" to the interrogatories or document demands properly served upon him. Fed. R. Civ. P. 37(d)(1)(A)(ii). Moreover, while the Court's inherent power to manage its own affairs "extends to a full range of litigation abuses," including conduct that falls outside the scope of any specific discovery rule, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), invocation of the inherent power requires a finding of bad faith, *id*. at 49, which the Court is unable to make on the present record. *See State v. United States Dep't of* Commerce, 461 F. Supp. 3d 80, 89 (S.D.N.Y. 2020) (quoting *SEC v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013)) ("Because of that 'bad faith' requirement, a court exercising its inherent powers will often have to overlook statements that are merely false, even suspiciously so. Instead, a court will impose sanctions pursuant to its inherent powers only where a person 'has made a false statement to the court *and* has done so in bad faith.'").

As noted above, however, Rule 41(a)(2) expressly authorizes a court to dismiss a plaintiff's claims, at that plaintiff's request, "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Those terms are "within the court's discretion," *Pugh-Ouza v. SpringHill Suites*, 2019 WL 3557794, at *3 (S.D.N.Y. July 9, 2019), *report and recommendation adopted,* 2019 WL 3554014 (S.D.N.Y. Aug. 5, 2019), and may include the imposition of sanctions. *See*, *e.g*., *Yimby, Inc. v. Fedak*, 2017 WL 887096, at *2 (S.D.N.Y. Mar. 6, 2017) (after plaintiff's counsel advised

7

the court that it could "no longer rely on" the evidence submitted by plaintiff in support of his successful TRO motion, court dismissed the case pursuant to Rule 41(a)(2) and ordered plaintiff to pay $30,000 to defendants). Ordinarily, of course, it is the plaintiff who is ordered to pay the sanction, as in *Yimby*. On the unusual facts of this case, however, the Court will exercise its discretion to impose a sanction upon the Law Department as a proper term of the dismissal that both parties request. Since the plaintiff is undeserving of any reward – and since the case is now over, rendering non-monetary remedies such as preclusion orders ineffective – the sanction will consist of a nominal payment to be made by the Law Department to the Clerk of Court. *See Grammar v. Sharinn & Lipshie, P.C.*, 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (a court "should always seek to impose the least harsh sanction that will . . . deter such conduct in the future.").

## Conclusion

For the reasons stated above, plaintiff's December 30, 2020 letter-motion (Dkt. No. 70) is GRANTED to the extent that:

1. This action is DISMISSED WITH PREJUDICE; and
2. The Law Department shall promptly pay the sum of $100 to the Clerk of Court.

The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York  
January 19, 2021

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**

8